LEHIGH VALLEY RAILROAD COMPANY, APPELLANT, v. MAAS & WALDSTEIN COMPANY, RESPONDENT.

Argued October 22, 1925—Decided February 1, 1926.

1. Plaintiff submitted to defendant a proposed statement of facts as a basis for settlement of accounts relating to demurrage charges. Defendant assented to the facts subject to the proviso that plaintiff, by likewise assenting, would waive certain other claims, and asked if this was what plaintiff wished to do. Plaintiff never replied, and dropped the whole matter. *Held*, that as the stipulation was not unqualifiedly assented to by both parties, it was ineffective as an admission of facts.
2. An agreement to waive the provisions of the Railroad act (*Comp. Stat.*, *p.* 4242, § 47) limiting intrastate demurrage charges to one dollar per day is illegal and unenforceable.

On appeal from the Supreme Court.

For the appellant, *George W. C. McCarter.*

For the respondent, *Josiah Stryker.*

The opinion of the court was delivered by

PARKER, J.   The complaint was in two counts. The first claimed a balance due for demurrage charges, the second was based on charges for storage of cars. The trial judge ordered

a nonsuit on both counts. The propriety of the nonsuit on the second count was not argued, and was substantially abandoned, and therefore our consideration of the case has been limited to the first count.

The first count comprised demurrage charges on both interstate and intrastate traffic, and these in turn involved the regulations promulgated by federal and state authority respectively; the former determined by the interstate commerce commission; the latter by the state legislature. *Pamph. L.* 1907, *p.* 648; *Comp. Stat. p.* 4242, § 47. The imposition of demurrage charges involved a feature known to railroad men as "free time," *i. e.*, the time for which a car may remain unloaded before demurrage begins to run. It also involved the question of "actual" delivery of cars on the defendant's siding, and "constructive" delivery when the siding was already full and the car had to be stored in plaintiff's yard, in which case "constructive" delivery depends on notice from carrier to consignee of the presence of the car. It further involved a system of "averaging" whereby, under certain limitations, extra promptitude in unloading and freeing cars before the expiration of free time was credited against demurrage for overtime. This last was the subject of special agreement between the parties.

The entire claim under the first count was based upon constructive delivery, *i. e.*, receipt on plaintiff's tracks, inability to deliver on defendant's spur for lack of room, notice, and expiration of free time thereafter. Plaintiff adduced evidence tending to show the receipt of the cars, inability to make actual delivery, and notice. It remained to prove that in the several cases set out in the bill of particulars the free time had expired, and, consequently, that demurrage had begun to run. Plaintiff attempted to prove the dates of release of the several cars by certain documentary matter which the court excluded as incompetent. An exception was taken to this ruling and it was assigned for error, but it was not argued and is therefore disregarded as abandoned.

As the case then stood, a nonsuit on the first count was inevitable, because there was nothing to show that any car had

remained undelivered after notice, long enough to start a demurrage charge running. Plaintiff's counsel, realizing this, thereupon undertook to show a balance due on the first count by certain correspondence then, and now claimed to amount to an admission of the existence of such balance. The material parts of this correspondence are extracted from appellant's brief. *Exhibit P 16* was a letter from the general solicitor of the plaintiff to the defendant, dated May 16th, 1917, enclosing a proposed agreed statement of facts. The body of the letter reads:

"I am sending herewith a copy of a proposed agreed statement of facts to be submitted to the board of public utility commissioners of New Jersey in the above-entitled matters. * * * This company is willing to submit its claim to the board in the manner suggested in the agreed statement. I have not attached to the agreed statement the tariff publications, or the average agreement, as you are familiar with the same. Will you kindly return this draft with any suggestions you have in reference thereto at an early date, as the amount outstanding against your company is so large that we must take immediate steps toward the settlement of the same."

The "agreed statement of facts," enclosed in the letter, after reciting and quoting from the demurrage rules, tariffs and average agreement, went on to say:

"The railroad company contends that the Maas & Waldstein Company, by the signing of the said agreement, made it unnecessary to keep separate accounts of cars delivered to the said company in interstate traffic and cars delivered in intrastate traffic; that by the signing of the said agreement the Maas & Waldstein Company waived the provisions of the statute of the State of New Jersey, in reference to demurrage. *Pamph. L.* 1907, *p.* 648. The said statute is as follows:

" 'Where the consignee of property transported by railroad to any point in this state cannot be found, or refuses to receive and pay charges and remove such property, the company may make and collect a reasonable charge, not exceeding

one dollar per day, for the detention of any railroad car containing such property, or for the use of the railroad car containing such property, or for the use of the railroad track occupied by such car, or for both such detention and use.'

"The Maas & Waldstein Company contends that by the signing of the said average agreement it waived the time provisions of the said act only, and agreed that instead of being allowed seventy-two hours' free time on cars moving in intrastate traffic it should be allowed only forty-eight hours on such cars in accordance with the interstate commerce commissions' regulations and tariffs respecting interstate cars; that by signing the said agreement they did not waive the provisions of the said act to the effect that demurrage charges on intrastate traffic in the State of New Jersey shall be no more than one dollar per car per day.

"It is agreed that if by signing the said average agreement the Maas & Waldstein Company waived the provisions of the New Jersey statute quoted above, the said company is indebted to the Lehigh Valley Railroad Company in the sum of $6,818 for demurrage assessed in accordance with the tariffs referred to above and made part of this statement, and that the said sum will be paid by the Maas & Waldstein Company, with such interest thereon as the board may decide to be due, immediately upon the decision of the board.

"It is further agreed that if the Maas & Waldstein Company did not waive that provision of the statute limiting demurrage charges to one dollar per day by the signing of the said agreement, the Maas & Waldstein Company will immediately pay to the Lehigh Valley Railroad Company, and the said railroad company will accept in full settlement of this claim all demurrage charges found by the board to be due the railroad company in accordance with the said average agreement, and the said interstate tariffs of the said railroad company in effect during the said months at the rate of one dollar per day demurrage instead of the increased demurrage charges demanded by the railroad company and published in the said tariffs." To this the defendant, under date of May 25th, 1917, replied as follows:

"We have yours of May 16th with a copy of the proposed agreed statement of facts to be submitted to the board of publice utility commissioners of New Jersey, relative to your claim against our company for demurrage assessed at Newark during April, June, July, August and September, 1916. The statement of facts is correct, and we are willing to submit the case to the board upon this statement. However, we desire to direct your attention to the fact that we have not claimed that all the assessed charges arose on interstate shipments. If you desire, for the purpose of adjusting the whole matter, to do so as outlined in the statement, we have no objection, but wish you to understand that in so doing you waive a portion of your claim, which, in our opinion, properly should be adjusted by other means. We are not returning the draft, as we desire to preserve the copy for our records."

If defendant's letter had closed with the sentence: "The statement of facts is correct, and we are willing to submit the case to the board upon this statement," and the matter had rested there, it might well be argued that defendant had concluded itself as to the existence of some indebtedness.

But by the rest of the letter the matter was held open for the answer of plaintiff as to whether it wished to waive the part of its claim mentioned therein. Plaintiff never did answer one way or the other. As testified by Doctor Walker, defendant's president, called as a witness for plaintiff, "Beles [plaintiff's general solicitor] was going to submit the whole thing, apparently, and when he discovered a substantial part of the delayed shipments, which could not be classed as intrastate, he dropped the whole thing. Q. This agreed statement of facts never became effective? A. Never."

But it is further argued that, at least, there is contained an admission of the facts that if the benefit of the state statute be waived, there was a balance of $6,818. Assuming this for the sake of argument, we concur with counsel for respondent in the view that as the statute limits the demurrage charge to one dollar per day, an agreement to pay more on intrastate cars would be illegal and unenforceable.

The defendant did admit a net balance of $4,084, and paid it. That was the extent of its effective admissions.

It follows that plaintiff's evidence failed to show the accrual of any further amount for demurrage charges under the first count, and, as this was essential to a recovery, the nonsuit was correct.

The judgment will be affirmed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, MC-GLENNON, KAYS, HETFIELD, JJ. 15.

*For reversal*—MINTURN, J. 1.